Here is number 23-307, Fluker v. Kelly. Mr. Harrington, why don't you just give a minute for people to rearrange their seats and leave the courtroom. Whenever you're ready, Mr. Harrington. Good morning, Your Honors. My name is Scott Harrington. I represent the plaintiff and the appellant in this case, Lamar Fluker. This is a case that arises, it's a lawsuit that arises following Mr. Fluker's designation that he was a member of a security risk group, in particular the Bloods, and placed in a security risk group residential unit while he was a pretrial detainee and had not been convicted yet. He was essentially, the evidence presented at the hearing that he was provided was some Facebook posts of him wearing red and black, other people wearing red and black, and using the word copy with a K instead of a C, which the initial officer, who was unit officer Verdura, and the hearing officer, Lieutenant McNeil, apparently attributed to him being a member of the Bloods. You're leaving out some rather important parts of his posts, such as his post identifying as a favorite quote, it's a K Cold World Blood, show no mercy, and another one in which he simply posted something, a video made by others, saying the title of which was When You're Not a Real Blood. Okay, well, the first one, Your Honor, I assume that if I put a favorite quote on my Facebook page, a quote from the Godfather, I would hope someone wouldn't say that I am a member of the Mafia and support Mafia killing. The standard here is some evidence. The standard here is some reliable evidence, yes, Your Honor. In this particular case, however, we have the hearing officer essentially rubber stamping. I took his deposition, and in his deposition, he basically said he did not perform any of his own analysis in reaching the determination. He relied solely on the analysis of Officer Verdura. I refer, and I recognize that it's a disciplinary hearing as opposed to what we call administrative hearings, but I argue that in this particular case, you have punitive measures. If someone is designated a security risk group member, there's punitive measures automatically baked into the system. Once you're designated that, you have certain restrictions that are actually set forth in the Connecticut directives there, including limited exercise time, limited out-of-cell time, limitations on visitors, limitations on having a hot pot and things like that. But also, as Mr. Fluker testified to, or at least in the submissions to the district court, was that if you're wrongfully designated a security risk group member, a member of the Bloods, what he had to live with is that he'd get into that cell with other gang, designated gang members. They want him to admit that he's a member of the Bloods. And the crips say, the state of Connecticut has already determined that you're a member of the Bloods, so you're automatically one of our enemies. Puts him in an impossible situation. In this particular case, I'm actually, one of the things I have argued that I don't think is, I really don't think it's ever been argued discreetly, is that the Connecticut procedures here, because they have built-in punitive measures, we should be employing the Wolf standards as opposed to the Hewitt standards in terms of what type of hearing he should receive. And in this particular case, I don't think he received, well, first of all, I don't think he received, I don't think that there was some reliable evidence based upon the testimony of Lieutenant McNeil. Because Lieutenant McNeil basically said he performed no independent analysis. And I may have incorrectly used the word investigation in my briefing that Attorney Donahue did pick up on. I'm not saying that he needs to perform separate independent investigations, but he needs to provide his own analysis to the evidence that is presented against Mr. Fluker. Otherwise, why have a hearing? Might as well just do it on the basis of the original finding. Can I just ask you, you said that because of the punitive, as you described them, nature of the segregation, that we should apply the Wolf standard. Yes. So how do we get around Proctor, which seems to say that, well, for these types of administrative segregation-type hearings, that that is not, in fact, punitive? Despite the fact that, I mean, I don't think it's in dispute here, but certainly there are obviously restrictions here. But how do we get around that case, I guess? Well, I think we have to look at, I think we have to look at exactly what restrictions were placed on him by virtue of the rules themselves and the inability to get out of there for six months to the minimum once he's been placed there. There's no way out. He's going to be there for a minimum of six months as a pretrial detainee. That is, that I think the court, if you look at the facts, is punishment. I understand that there have been determinations that generally administrative decisions are not subject to the Wolf standard. But I would actually go back. I'm applying, I'm asking this court, when it does its de novo review, to apply the Wolf standard. But I think even under the Hewitt standard, some reliable evidence requires something more than rubber stamping what has been placed in front of you. Rubber stamping is what the adjudicator does. The focus is on what the evidence was. Correct, Your Honor, but the evidence is simply Facebook posts, and he relied on Officer Verdura's opinion, based on whatever experience she had, that this type of Facebook post means you're a member of the Bloods. He didn't, he testified that he didn't analyze the evidence actually himself. He relied on that decision. And also, one of the reasons that we're allowed to have administrative segregation, one of the bases is supposed to be that we're concerned about the safety of corrections officers and other inmates of having gang members in general population. He specifically testified that he made no finding that Mr. Fooker posed any imminent or immediate threat to any member of the prison population. If he's making that finding, why are we segregating him? There's a whole point of having the segregation. Though there may be another point, and I see my time is coming closer, but there may be another point that we offer an opportunity to rehabilitate them from being a gang member. But if he denies he's a gang member, and he's not a gang member, what is he getting here? He's being placed in this gang unit and left in an untenable situation. I see my time's up. Unless there's questions, I'll reserve for rebuttal. Thank you, Your Honor. Thank you. Mr. Donahue. Thank you. I am James Donahue for the appellee, and we ask that you affirm the district court decision. May it please the court. The plaintiff in this case is asking this court to look beyond the plain and uncontested facts and further ask this court to look outside the clear case law in order to find that due process rights were violated. With regard specifically to the due process hearing, the plaintiff received notice of the hearing to designate him as a security risk group or SRG member. He was shown the evidence to be used against him at that hearing. The hearing took place a week after the notice was received. The plaintiff was provided the opportunity to present witnesses and have an advocate. The plaintiff attended the hearing and was provided an opportunity to present his position. The plaintiff was also provided and received a written explanation of the final decision of the hearing officer, and the specific evidence used against him for that finding. This is certainly more than Hewitt asks. Hewitt only asks that he receive notice and an opportunity to present his position. We argue that this is being the long form. I think it also, and that was going to be my next point, Your Honor, is that as well, as a secondary affirmance, it also satisfies Wolf hearing. With regards to the evidence of this case, it is uncontested that the Facebook account was that of the plaintiffs. The statements made on the Facebook pages were those of the plaintiff. I know there was some argument to a certain extent with regards to, there was one of the pictures where it was Mr. Fluker with his son, and his son is wearing the school colors and things of that nature. That wasn't the only evidence. As Your Honor had also pointed out, there were other gang indicia that was, conveniently hasn't been argued about. The use of the term salute, as well as the quote on the first page. One of the things that seems to me to be clearly deficient about the hearing was that a number of the items that were cited as support for his membership in the Bloods was without any expert testimony saying that the person testifying was familiar with, had expertise in these things, and that substituting a K for a C or using particular word forms like UB, knowing that these were things that were indicative of the Bloods. There was none of that. So it seems to me that all of that evidence, evidence that required expertise to relate it to Bloods membership is worthless here, because there was no such evidence. It does seem to me that it's a little bit different when you come to a statement that says it's a cold world blood, show no mercy, and another one saying when you're not a real blood, because those seem on their face to proclaim membership in the Bloods, so that one doesn't need expertise to consider them as indicative of the thing in question, as opposed to the others. Well, I would argue, Your Honor, that one, under, I could not find a case, and certainly no case had been cited, that required expert testimony at either a Wolf or a Hewitt hearing. Well, no, but it just requires evidence. It's not evidence. I mean, if I say to you, if I say to you he substituted a B for a K for a C, that means that he's a Chinese communist. I mean, I could say anything. Does that make it evidence of the fact that's being, that's in question? It doesn't. It's not evidence of it unless there's something that makes it evidence of it, and that would be, in most cases as to this kind of thing, it would be expert testimony, somebody claiming knowledge that substituting a K for a C means that you're a blood. Yes, Your Honor, and I was going to go on and indicate that Captain Vidura was a member of the Intelligence Unit. Her job on a daily basis is to go through these things based on her own training and expertise, create these reports, and have those reports provided to Lieutenant McNeil. Lieutenant McNeil indicated in his deposition that he knew of Captain Vidura. There was also a report that he had- Can I just jump in for a second? Does McNeil indicate he does say he knew Officer Vidura? Yes. Does he say something about, oh, I'm familiar that she has expertise in this, or she related to me, like what's the connection in terms of his knowledge of her purported reliability here? Well, I don't think there's anything necessarily in the deposition that specifically says, I know Captain McNeil, or now Captain Vidura, I know she works for this unit, I know she's been training for the last five years. There's nothing going to that, but he did say he knew of Captain Vidura. He knows those reports are the typical reports that he would receive as part of those kinds of hearings, and one of the other pages in that report, as far as the initial placing of Mr. Fluker in RHU, indicated that Captain Vidura, or it might have been at the time Lieutenant Vidura, from the DOC Intelligence Unit at Central Office, created a report, and here are the things that are in that report. So there was information with regards to who had drafted the report, what the purpose of the report was, and it is very typical in the Department of Corrections for members of the Intelligence Unit to have that training, which Captain Vidura did testify to with regards to her deposition. I don't think it matters because I think that the items that I pointed to before are sufficient under the standard, but I just don't see, you know, it may be, I have no doubt that you're correct that it could have been, that evidence could easily have been supplied by reference to the expertise of the person who gave the information to the, but it wasn't there. And it normally doesn't, Your Honor, and even the case law, either under CIRA, and even I believe it might have been under Superintendent as well, it is very common for DOC officials, the hearing officers, to accept the reports of other officers. That has never necessarily been challenged. I don't know of any case that says that as the hearing officer, you then have to go into all the training, experience. No, no, I didn't say that the hearing officer has to go into the training and experience. It just has to be evidence that something is indicative of membership in the bloods. And the mere fact that a person says he substituted a K for a C, that means he's a member of the bloods. That doesn't make, that's not evidence of membership in the bloods. That's just somebody saying something off the wall, and it may be true, may not be true. There's nothing in the content of it that suggests that it shows membership in the bloods. And maybe that one thing could be correct, Your Honor, but as Your Honor had pointed out, there were a couple of other statements within there that first of all directly go to that. And there was testimony from Lieutenant McNeil that he did have at least, it may have been limited and certainly not the same level of experience of Captain Fedora, but there was some training that he had had as to other blood identifiers. I believe he had testified to knowledge- Well, it virtually said he didn't have any. It was certainly minimal, and I'm certainly not trying to argue that it was even remotely as close as Captain Fedora. But DOC officials at all levels, he had testified he had had some training with regards to other indicia. So it's not as if he had complete lack of all knowledge whatsoever. He did have some limited- I'm going to nitpick you a little. Did he indicate it was training, or did he just indicate familiarity in terms of having conversations with people about some of these terms? I believe he testified more that it was familiarity, having done most of these hearings, that he had talked to other officers, but I don't think it was very specific training, or certainly nothing in the record that would indicate it was very specific training with regards to that. I don't know. In my humble opinion, you would be better off to argue your strong points than argue weak ones that you don't need. Well, I was just very quickly going to point out, Your Honor, with regards to the exhaustion issue, certainly with regards to the process, there was absolutely no notice in the appeal that would give any indication that there were any due process violations, which is why the court, the district court, correctly granted summary judgment as to that issue. Obviously, we've already discussed specifically with regards to the evidence of the case, and if there's no further questions, I'll rest on my brief. Thank you, Counsel. Thank you, Your Honor. We'll move on. Briefly, one of the two points Your Honor indicated you felt didn't require any expertise or some testimony connecting was the video of HaHa Davis. That was something that was posted. It was the title of the video. I beg your pardon, Your Honor? The title. The title was When You're Not Real Blood. If you look at the actual video itself, which I have no idea whether it was played for anyone. When You're Not A Real Blood. When You're Not A Real Blood. Not A Real Blood. It's a comedy bit from a social media comedian that had over almost a million downloads before it got passed through on Mr. Fluker's account. Again, I would equate that to be something like me posting a clip from The Godfather or something like that. It's not him. It's not anybody he knows. It's a comedian basically satirizing people who claim to be blood-sitter or not. And the commentary that was attached to that post particularly said from somebody else who posted on Mr. Fluker's face, I just don't think that's funny. But that really was the extent of it. And again, I don't think the quote, the quote's not attributed to him personally. It's on his thing as a favorite quote. I don't know where the quote came from, frankly. I Googled it. I couldn't find it. It's coming from any movie. But it seems like it's something that somebody else said. But there's no evidence one way or another who the author was of that quote. When you listen to it, it's his favorite quote. I see that my time is up, so unless there's some other questions, I'd just ask that it be remanded back and he'd be entitled to have the case presented to a jury as to whether or not there was sufficient reliable evidence on this and whether or not his due process rights were violated. Thank you, Mr. Harrington. Thank you both. We'll take the case under advisement.